981 So.2d 508 (2008)
Ricky WEAVER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-4364.
District Court of Appeal of Florida, Fourth District.
April 2, 2008.
Rehearing Denied June 4, 2008.
William Mallory Kent, Jacksonville, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Daniel P. Hyndman, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
Ricky Weaver appeals his conviction after a jury trial of a scheme to defraud less than $20,000 in violation of section 817.034(4)(a)3, Florida Statutes (2007).[1] We affirm and hold that the state's evidence established a violation of the statute.
Weaver operated a paralegal business. He promised clients that he would complete legal work within a short time, usually less than ten days. At the time he made these promises and took the clients' money, he did not intend to perform within such a time frame. To most of the clients, the time for performance was an important part of the contract. Weaver developed an elaborate set of fake excuses for his assistant to tell clients when he failed to timely produce the legal work. Even while he was not performing as promised for existing clients, Weaver continued to make the same bogus promises to prospective clients to get them to enter into contracts and pay *509 him money. Most of the clients who testified at trial said that they never heard or received legal work from Weaver after they paid him. Weaver performed on some contracts, but he did so well beyond the promised time frame.
Weaver defended on the theory that he ran a legitimate business, that he had merely fallen behind in his work, and that the case was proper for the civil court system, but was not a criminal matter. Weaver pointed to the written contracts signed by the clients, which provided that there was no guarantee on how quickly the business would produce legal documents. In an instant message to his secretary, Weaver was confident that his business practices were not criminal: "If you call the cops on a business, it's a civil matter. It's not a criminal matter. They don't deal with that and neither does the State Attorney."
Weaver argues that the trial court erred in denying his motions for judgment of acquittal, since the state failed to prove that he acted with criminal intent. However, Weaver's operation of a business does not insulate him from criminal charges; the state's evidence demonstrated that Weaver's "business practices cross[ed] the line that convert[ed] them from legal to illegal activities." Kipping v. State, 702 So.2d 578, 581 (Fla. 2d DCA 1997).
Section 817.034(4)(a)3 provides that "[a]ny person who engages in a scheme to defraud and obtains property thereby is guilty of organized fraud . . ." Section 817.034(3)(c)2 defines "property" as "anything of value," including "rights, privileges, interests, and claims." Under section 817.034(3)(d), "scheme to defraud" means "a systematic, ongoing course of conduct with intent to defraud one or more persons, or with intent to obtain property from one or more persons by false or fraudulent pretenses, representations, or promises or willful misrepresentations of a future act." (Emphasis added). As the supreme court stated in Pizzo v. State, 945 So.2d 1203, 1207 (Fla.2006), organized fraud includes the following elements:
(1) Engaging in or furthering a systematic, ongoing course of conduct (2) with (a) intent to defraud, or (b) intent to obtain property by false or fraudulent pretenses, representations, or promises, or willful misrepresentations of a future act, (3) resulting in temporarily or permanently depriving any person of the right to property or a benefit therefrom, or appropriating the property to one's own use or to the use of another person not entitled thereto.
(quoting Donovan v. State, 572 So.2d 522, 526 (Fla. 5th DCA 1990)). In Pizzo, the supreme court recognized that the "elements of grand theft are included in the elements of organized fraud." 945 So.2d at 1207.
Here, Weaver, at the very least, temporarily deprived the victims of the use of their money by falsely representing that he would perform his side of the contract within a specific time. The evidence supports the view that when he made these promises, he had no intention of performing them, so that he "willful[ly] misrepresented a future act" within the meaning of section 817.034(3)(d). This interpretation of the statute is consistent with the tort of fraudulent misrepresentation, which may be based "upon a promise of future action" where the promise "is made with no intention of performing." Thor Bear, Inc. v. Crocker Mizner Park, Inc., 648 So.2d 168, 172 (Fla. 4th DCA 1994); see Wadlington v. Cont'l Med. Servs., Inc., 907 So.2d 631, 632 (Fla. 4th DCA 2005); Mejia v. Jurich, 781 So.2d 1175, 1177-78 (Fla. 3d DCA 2001). It is also consistent with theft by "false pretenses" under section *510 812.012(3)(d)1, Florida Statutes (2007); "[a] promise to do something in the future" will support a conviction for false pretenses if there is "evidence that the defendant knew at the time this promise was made that it would not be honored." Lash v. State, 399 So.2d 534, 536 (Fla. 3d DCA 1981).
Weaver relies heavily upon Stramaglia v. State, 603 So.2d 536 (Fla. 4th DCA 1992), but that case is distinguishable. The scheme to defraud charge in Stramaglia arose from the defendant contractor obtaining labor and materials from subcontractors on road construction projects. Id. at 536-37. Although we reversed the conviction, we twice noted that there was no evidence that the contractor "tricked the subcontractors into entering into or performing their contracts." Id. at 537, 538. Here, the state's evidence was that Weaver misrepresented his ability to perform within the promised time periods, knowing that he would not perform, so that this case involves a fact pattern that did not exist in Stramaglia.
Weaver also argues that "Florida Law does not allow [a] conviction for intent to defraud when the evidence is predicated upon false promises to do a future act." He cites to cases that are no longer good law because of an amendment to the theft statute after the cases were decided. See Youngker v. State, 215 So.2d 318 (Fla. 4th DCA 1968); Martin v. State, 379 So.2d 179 (Fla. 1st DCA 1980); Biederman v. State, 392 So.2d 982, 984 (Fla. 4th DCA 1981).
The Youngker defendant constructed improvements on his property. The state charged him with the theft of labor or materials from contractors. We rejected the state's argument that the defendant was guilty of larceny by false representation under a 1963 statute because "at the time the defendant made [certain] promises he did not intend to perform them." 215 So.2d at 323. We held that only a false promise of a "past or existing fact" would support a "conviction for false pretenses." Id.
The first district followed Youngker in a case prosecuted under section 812.014, Florida Statutes (1977), after the 1977 amendments to the theft statute. See Martin, 379 So.2d at 181-82; see also Jackson v. State, 736 So.2d 77, 83 (Fla. 4th DCA 1999) (observing that the 1977 amendments to Chapter 812 "broaden[ed] the definition of the type of conduct that constitutes theft"). Citing Youngker, the court held that a false promise to do something in the future, "is not a representation of a past or existing fact and will not support a conviction for false pretenses." Martin, 379 So.2d at 182. At the time Martin was decided, "false pretenses" was one of the methods of theft specified in the definition of "obtains or uses" in section 812.012(3)(d)1, Florida Statutes (1977).
Significantly, in 1981, the legislature amended section 812.012(3)(c) to expand the definition of the conduct element of theft, "obtains or uses," to include a "willful misrepresentation of a future act, or false promise." Ch. 81-85, § 1, Laws of Fla. The amendment thus inserted within the definition of theft precisely that type of conduct that Youngker and Martin held to be non-criminal.
Affirmed.
WARNER and FARMER, JJ., concur.
NOTES
[1] We cite to the 2007 version of the statute because the statute has not been amended since it was enacted in 1987.