379 So.2d 179 (1980)
John Lee MARTIN, Appellant,
v.
STATE of Florida, Appellee.
No. OO-19.
District Court of Appeal of Florida, First District.
January 28, 1980.
*180 Michael J. Minerva, Public Defender, and Carl S. McGinnes, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., Richard W. Prospect and Doris E. Jenkins, Asst. Attys. Gen., for appellee.
LARRY G. SMITH, Judge.
Appellant appeals his conviction by a jury of the offense of grand theft. We reverse.
The information charged an offense under Section 812.014, Florida Statutes (1977), as follows:
"JOHN LEE MARTIN, on the 25th day of July, 1978 in the state and county aforesaid did unlawfully and feloniously obtain and use $200.00 cash of D.M. Brooks with the intent to deprive D.M. Brooks of a right to the cash or a benefit therefrom and to appropriate the cash to defendant's own use, contrary to Florida Statutes 812.014."
Appellant agreed to partially construct a small building for P.M. Brooks on property owned by Brooks. The agreement called for a down payment of $200.00, and payment of the sum of $150.00, plus delivery to appellant of a steam pressure washer on completion of the building. All materials to be used in the partial construction were to be furnished by appellant. A written memorandum briefly setting out the terms was signed by the parties on July 15, 1978, and Brooks' son gave appellant a check for $200.00 on that date, which appellant promptly took and cashed at a nearby store. Although Brooks and his son testified the $200.00 was advanced to appellant to buy materials, both the written agreement and the check referred to the sum of $200.00 as a down payment.
The written agreement made no mention of the time for commencement of construction or completion of the building. Appellant had no materials delivered to the job site, never began construction, nor has he returned the $200.00 down payment. Testimony of Brooks and his son established that appellant was to begin construction one or two days after the payment of $200.00 and signing of the memorandum. Toward the middle or latter part of August 1978, Brooks had a telephone conversation with appellant in which appellant renewed his promise to start and complete the building within the next ten days or so, which was agreeable to Brooks. However, before appellant made any move to begin construction, and without any further contact from Brooks or demand for return of the down payment, a warrant for arrest of appellant on charge of grand theft was issued, and this prosecution began.
Appellant testified in his own defense that Brooks understood that he was working on another job at the time he made the agreement which would prevent him from starting immediately; that he fully intended to perform the contract, but had remained otherwise occupied on other business; that contrary to the testimony of *181 Brooks, he had offered to return the down payment to Brooks during the August telephone conversation and that he was still willing to do so, but when the warrant was issued that "stopped everything", because the case was then in charge of the court.
Appellant relies for reversal upon his contention that his motions for judgment of acquittal made at the close of the State's case, and at the conclusion of all testimony, should have been granted, relying primarily upon Ricard v. State, 181 So.2d 677 (Fla. 3rd DCA 1966), and Edwards v. State, 226 So.2d 140 (Fla. 2nd DCA 1969). In Ricard the State proved that the victim gave the defendant money to open an account in Jamaica for the purpose of aiding the victim's Cuban husband in his attempt to obtain a visa to that island. The victim later discovered the money was not needed and demanded its return. The money had not been deposited in the bank in Jamaica, but defendant concealed this fact from her, and even prepared in her presence a "fake" cablegram for transmission to the Jamaica bank, although there was no equipment for sending cables in defendant's office at that time. No money was ever sent to a bank in Jamaica. Defendant testified that it was impossible to send money to Jamaica, and that he instead used a correspondent in Mexico City, to whom he sent the money. Later it developed that he was unable to contact his correspondent in Mexico City. In reversing Ricard's conviction, the court determined that since the evidence upon which the State relied proved only that the defendant received the money, and that no bank account was ever opened, the evidence was insufficient to establish defendant's guilt beyond all reasonable doubt, there being no proof that the defendant appropriated the money to his own use, or that of another person other than the true owner.
Similarly, in Edwards v. State, supra, several persons gave the defendant money for the purpose of acquiring a radio station. A corporation was to be formed and the monies were to be deposited into a corporate bank account by the defendant. The State proved that the money was given to the defendant, and that no bank account was ever opened. However, there was no proof that defendant had expended any of the money. It was held that the State failed to establish a prima facie case of grand larceny, and the court therefore reversed the conviction, holding that the lower court should have granted the motion for directed verdict at the close of the State's case.
Although the proof in the instant case may be said to suffer from the same deficiency as in the Ricard and Edwards cases, we find other authorities upon which to base reversal of the conviction. We first note that under the amendments to the larceny statute, Section 812.014, Florida Statutes (1977), a variety of offenses relating to the unlawful appropriation of property are now included in the single crime called "theft". Thus, under the "definitions" section (Section 812.012(2)(a), (b), (c), (d), 1 and 2), the offense now includes any unauthorized use, obtaining property by fraud, conduct previously known as stealing, larceny, embezzlement, misapplication, misappropriation, conversion, or obtaining money or property by false pretenses, fraud or deception; and other conduct similar in nature. We therefore have considered the evidence to determine its sufficiency to prove the crime of "theft" in any of its forms.[1]
As in Youngker v. State, 215 So.2d 318 (Fla. 4th DCA 1968), the evidence here *182 will not sustain a conviction of larceny in the common law sense because no "taking" has been shown. The money was voluntarily given to appellant pursuant to his contract with P.M. Brooks. Although appellant failed to perform the contract, there was no unlawful "taking" of the money. The Youngker case also considered whether the defendant could have been convicted under the statute proscribing the obtaining of property "by color or aid of fraudulent or false representations or pretense" (Section 811.021, Florida Statutes (1963)). The State argued there, as here, that at the time the defendant made his promises he did not intend to perform them; ergo, the defendant made a false representation of his then present intentions. The Youngker court rejected these contentions, stating that the most the evidence showed was that the defendant "made unfulfilled promises to pay for certain labor and materials". The court pointed out that a false representation of a past or existing fact is essential to a conviction under the statutes; and, a promise to do something in the future, even though it be a false promise, is not a representation of a past or existing fact and will not support a conviction for false pretenses. We find this to be the settled law in this State. Colangelo v. State, 320 So.2d 826 (Fla. 4th DCA 1975); Waterman v. State, 317 So.2d 469 (Fla. 4th DCA 1975); Scarlett v. State, 25 Fla. 717, 6 So. 767 (Fla. 1889).
We also find the evidence insufficient to constitute a crime under the theory of "conversion", or "embezzlement", or crimes of a like nature. In Berney v. State, 38 So.2d 55 (Fla. 1948), a case factually similar to this one, the evidence proved that defendant entered into a written contract to supply all materials and labor to erect a completed building according to certain plans and specifications. Under the contract, an initial payment of $2,500.00 became due on the date of signing. Pursuant to the contract the contracting party paid to defendant the sum of $1,135.00 as a part of the initial payment, upon the representation that defendant would use the money for the purpose of purchasing steel to be used in the building. Instead of purchasing the steel, the defendant pocketed the sum advanced and disappeared without returning the money, furnishing materials to or commencing work on the building. The Supreme Court of Florida reversed defendant's conviction of embezzlement, stating, among other things:
"The State has failed to prove that the money was property belonging to the prosecuting witness, because under the facts of the case the money paid over did not retain its character as property of the prosecuting witness after it had been placed in the hands of the appellant, but became, in law, the property of the appellant as partial payment on the contract; ..." (opinion page 57)
In view of the insufficiency of the proof, under the foregoing authorities, we reverse appellant's conviction of grand theft. It becomes unnecessary for us to consider the remaining point on appeal.
The judgment of conviction and sentence appealed from are hereby reversed, and appellant is ordered discharged.
ROBERT P. SMITH, Jr., and WENTWORTH, JJ., concur.
NOTES
[1] It is noted, however, that the case went to the jury on instructions describing the offense only in general terms as used in the enacting clause proscribing the offense, Section 812.014, Florida Statutes. The court charged the jury:

"A person is guilty of theft if he knowingly obtains or uses or endeavors to obtain or use the property of another with intent,
A. To deprive the other person of a right to the property or a benefit therefrom, or
B. To appropriate the property to his own use or to the use of any other person not entitled thereto.
* * * * * *
"The intention to commit grand theft, that is to feloniously appropriate another's property to his own use or to deprive the owner permanently of his property, is a question of fact to be determined by the jury and is an essential element in the crime of grand theft."